IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**DAVID D. STURGILL,**

        Plaintiff,

       v.

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY**,

        Defendant.

Civ. No. 6:16-cv-00862-JR

**OPINION & ORDER**

RUSSO, Magistrate Judge:

Plaintiff David Douglas Sturgill seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

Plaintiff was born on May 2, 1966. Tr. 27. He has at least a high school education and is able to communicate in English. Id. Plaintiff filed a Title II and a Title XVI application on September 18, 2012, alleging disability based on neck fusion; knee, back, and elbow surgery; knee problems; back problems; elbow problems; hip problems; arm, wrist and ankle injuries; and crushed right leg, with an onset date of July 31, 2011, later amended to March 2, 2012. Tr. 15, 17, 82. His application was denied initially and upon review. Tr. 15. At plaintiff's request, a

hearing was held before an Administrative Law Judge ("ALJ") on October 10, 2014. Id. On December 19, 2014, the ALJ issued a decision finding plaintiff not disabled. Tr. 28. On March 17, 2016, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

**DISABILITY ANALYSIS**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

Id. at 724-25; see also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Bustamante, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. Id. at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); see also 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant

is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. Bustamante, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, March 2, 2012. Tr. 17. At step two, the ALJ determined plaintiff had the following severe impairments: obesity, degenerative disc disease with post-laminectomy syndrome; degenerative joint disease with a history of recent anterior cruciate ligament (ACL) reconstructive surgery of the left knee; and depression. Id. At step three, the ALJ determined plaintiff's impairments did not meet or medically equal one of the listed impairments. Tr. 19.

The ALJ then assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff could perform sedentary work with the following additional limitations: no more than frequent stooping, kneeling, crawling, and crouching; occasional climbing of stairs and ramps; no climbing ropes, ladders, or scaffolds; no more than frequent overhead reaching; no more than occasional reaching with the left upper extremity; and plaintiff is limited to simple, repetitive, routine tasks. Tr. 21.

At step four, the ALJ determined plaintiff could not perform past relevant work. Tr. 26. At step five, the ALJ found plaintiff not disabled and had the RFC to perform work as a small parts sorter, final inspector of small parts, and marker/price sticker. Tr. 27-28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial

evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. Batson, 359 F.3d at 1198 (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. Id. at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

**DISCUSSION**

Plaintiff alleges the ALJ erred by (1) rejecting plaintiff's subjective symptom testimony; and (2) improperly weighing the medical evidence. Plaintiff urges this Court to remand for immediate payment of benefits.

**I.    Subjective Symptom Testimony**

Plaintiff asserts the ALJ erred by rejecting plaintiff's subjective symptom testimony. There is no evidence of malingering, so "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

In this case, the ALJ did not fully credit plaintiff's subjective symptom testimony on the basis that plaintiff's alleged physical and mental limitations were not supported by the objective medical evidence. Tr. 22. An ALJ "may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, plaintiff reported difficulty walking and standing. Tr. 60-62, 243. Plaintiff's surgeon, however, reported plaintiff was "doing well" following his ACL surgery with no specific restrictions or follow-up. Tr. 402.

The ALJ also noted that plaintiff's "robust" daily activities were inconsistent with his alleged limitations. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r, 554 F.3d 1219, 1227 (9th Cir. 2009). Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Batson, 359 F.3d at 1196. Plaintiff alleged difficulty walking, sitting, standing, lifting, and reaching. Tr. 243. Plaintiff also alleges difficulty with memory, concentration, ability to complete tasks,

understand and follow instructions, and get along with others. Tr. 243. The ALJ noted plaintiff completes household chores, including sweeping, vacuuming, laundry and washing dishes. He goes grocery shopping and manages his own finances. He drives his son to and from the bus stop, attends church, and meets regularly with friends and family. Tr. 20, 55-58, 242. The ALJ reasonably concluded that plaintiff's daily activities were inconsistent with his alleged degree of impairment.

Although the evidence may be susceptible to a more favorable interpretation, the Court concludes the ALJ's interpretation was rational and supported by substantial evidence. "When evidence supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Batson, 359 F.3d at 1196. Accordingly, the Court affirms the ALJ's conclusions regarding plaintiff's subjective symptom testimony.

## II. Medical Opinion Evidence

Plaintiff contends the ALJ erred by disregarding the opinions of Ryan Scott, Ph.D., plaintiff's examining psychologist, and Cynthia Voegeli, FNP-C, plaintiff's treating family nurse practitioner.

### A. Dr. Ryan Scott

The ALJ is responsible for resolving conflicts in the medical record. Carmickle, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Turner v. Comm'r, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or

examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." Id.

Dr. Scott performed a psychological examination of plaintiff in September 2014, and opined that his cognitive limitations and depression would make it difficult for plaintiff to follow instructions, concentrate, or maintain regular work attendance. Tr. 436-437. Dr. Scott diagnosed plaintiff with "Major Depressive Disorder, Severe, Recurrent, With Anxious Distress," and "Alcohol Use Disorder, In Sustained Remission." Tr. 438. Dr. Scott opined that plaintiff's mental health issues became significant in 2010, although Dr. Scott believed his cognitive issues were probably lifelong. Id. The ALJ relied on Dr. Scott's assessment in finding plaintiff's depression to be a severe impairment. Tr. 18.

The ALJ gave little weight to Dr. Scott's opinion regarding plaintiff's cognitive and social limitations, finding that (1) Dr. Scott's opinion was inconsistent with the objective medical evidence; (2) Dr. Scott assessed plaintiff's mental limitations going back to 2010; and (3) the limitations identified by Dr. Scott were at odds with plaintiff's "robust" daily activities. Tr. 18-22.

An ALJ may reject a medical opinion that is internally inconsistent, inconsistent with the claimant's activities, or inconsistent with other medical findings. See Morgan v. Comm'r, 169 F.3d 595, 601-03 (9th Cir. 1999). A medical opinion may also be rejected as unreasonable in light of other evidence in the record. Id. at 601. Plaintiff's robust daily activities have been previously noted and the Court concludes the ALJ reasonably considered those activities in assigning less weight to Dr. Scott's opinion, particularly regarding the cognitive demands of those daily activities. The ALJ also noted there is no explanation for Dr. Scott's conclusion that plaintiff's mental and cognitive limitations date back to at least 2010 and that such a conclusion

is contradicted by the fact that plaintiff continued to work until 2011 and possibly into 2012.  Tr. 26, 45-46.

The ALJ also determined that Dr. Scott's opinion was contradicted by the rest of the medical record.  In May 2012, plaintiff was seen by Glenn Keiper, M.D., who noted plaintiff has fluent speech, was oriented to person, place, and time, had "no deficit of memory or mentation," and an "adequate" attention span.  Tr. 282.  Dr. Keiper noted no history of depression.  Tr. 281.  Paul Coelho, M.D., examined plaintiff in October 2012, and found him "pleasant and cooperative" with "no apparent distress."  Tr. 285.  Dr. Coelho found plaintiff appropriately alert and oriented to person, place, time, and situation, and found him to be "a fair medical historian."  Id.  In February 2013, plaintiff was seen by James Kiley, M.D., who found plaintiff well-groomed and cooperative, with "normal" speech, attention, concentration, and language.  Tr. 309.  In April 2013, plaintiff was seen by Holly Easton, M.D., who found plaintiff pleasant, with a normal affect and in no acute distress.  Tr. 322.

Based on this record, the Court concludes that the ALJ adequately supported his conclusion that Dr. Scott's diagnosis of mental and cognitive limitations was inconsistent with the medical evidence and plaintiff's daily activities.  The Court concludes that the ALJ gave specific and legitimate reasons for his decision to assign little weight to Dr. Scott's opinion and that decision was supported by substantial evidence.

**B.  Cynthia Voegeli**

An ALJ may discount the opinion of an "other source," such as nurse practitioner, if he provides "reasons germane to each witness for doing so."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation marks and citation omitted); Popa v. Berryhill, ___F.3d___, No. 15-16848, 2017 WL 3567827, at *4 (9th Cir. Aug. 18, 2017).  In considering

the opinions of those who are not "acceptable medical sources," an ALJ may take into account the following factors: (1) the length of the source's relationship with the claimant and how frequently the source has seen the claimant; (2) whether the source's opinion is consistent with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) the quality of the source's explanation of an opinion; (5) whether the source has expertise related to the claimant's impairment; and (6) any other factors tending to support or refute the opinion. See SSR 06-03p, available at 2006 WL 2329939, at *4-5.

In December 2012, plaintiff was seen by Cynthia Voegeli, a family nurse practitioner. Tr. 305. Ms. Voegeli administered a Patient Health Questionnaire, which attempts to quantify nine criteria for depression ("PHQ-9"). The PHQ-9 results indicated "moderate depression, although the patient has little insight of this." Tr. 305, 312. In January 2013, plaintiff reported feeling "frustrated" with "little joy in anything." Tr. 303. Plaintiff also reported trying many different anti-depressants, but did not like how they made him feel. In February 2013, Ms. Voegeli asked Ellie Dominguez, Ph.D., to meet briefly with plaintiff. Dr. Dominguez did not provide a separate report of plaintiff's condition or make a diagnosis, but her summary is included in Ms. Voegeli's notes. Dr. Dominguez described plaintiff as oriented, but scattered in his thinking. Plaintiff avoided eye contact and became tearful when describing deaths in his family. Dr. Dominguez "did not pick up on diagnosed active conditions," but noted plaintiff's history of substance abuse and family troubles as possible sources of stress. Tr. 311. On February 14, 2013, Ms. Voegeli reported plaintiff was "overwhelmed with [a] multitude of forms and appointments" and "stressed." Tr. 297. That same month plaintiff reported depression to Ms. Voegeli and presented with feelings of "hopelessness," however, Ms. Voegeli found plaintiff appropriately oriented to time, place, person, and situation, and significantly, without mood

swings or suicidal ideation. Tr. 418, 420. Ms. Voegeli referred plaintiff to Carmen MacMillan, a mental health provider, who noted plaintiff's reports of depression and difficulty concentrating, apparently related to plaintiff's family issues. Tr. 416. Ms. MacMillan observed that plaintiff might benefit from an anti-depressant "to help him get through this difficult time," but no antidepressant was prescribed. Regarding plaintiff's alleged mental and cognitive limitations, the ALJ determined those limitations were contradicted by both the medical evidence and plaintiff's daily activities. Tr. 25-26.

Regarding plaintiff's physical complaints, Ms. Voegeli opined plaintiff was limited to only occasional overhead reaching and should never "handle, finger, or feel" as part of his job. Tr. 296. Ms. Voegeli opined plaintiff could lift less than ten pounds frequently and stand/walk at least two hours in an eight hour work day. Tr. 295. She opined plaintiff would need to periodically alternate sitting and standing to relieve pain or discomfort and he would be limited in his ability to push and pull with both his upper and lower extremities. Id. Ms. Voegeli opined that plaintiff had been disabled since 2009. Tr. 296.

The record shows that plaintiff was injured in a car accident in March 2012. Tr. 264. Emergency room reports indicate "mild discomfort," no difficulty with ambulation, and negative straight leg raises. Id. X-rays revealed mild lumbar levoscoliosis and degenerative changes in the lower thoracic spine, but no acute fractures or anterolisthesis. Tr. 267.

On March 5, 2012, and again on March 19, 2012, plaintiff was seen by Mark Litchfield, M.D., who also found negative straight leg raise results, with normal strength and sensation. Tr. 269, 271. On May 8, 2012, plaintiff was seen by Glenn Keiper, Jr., M.D., who found normal gait and station, without crepitation or tenderness. Tr. 281. Dr. Keiper found a normal range of motion without pain in all of plaintiff's extremities. Id. Dr. Keiper did find a positive straight

leg raise result on plaintiff's left side, but noted normal motor strength in all extremities. Tr. 282. In October 2012, plaintiff was seen by Paul Coelho, M.D., complaining of arm, back, neck, shoulder, and inguinal pain. Tr. 284. Dr. Coelho found a full, painless range of motion in plaintiff's shoulders and full motor strength in plaintiff's lower extremities. Tr. 285. Dr. Coelho observed normal gait and station, with no listing or limping. Id.

In February 2013, plaintiff was seen by James Kiley, M.D., reporting numbness in his hands and weakening grip strength. Tr. 308. Dr. Kiley found full strength in plaintiff's upper extremities with "fairly good grip strength," although Dr. Kiley noted he was not sure plaintiff had given his full effort when performing the test. Tr. 309. Dr. Kiley found plaintiff's gait and station "unremarkable." Id.

In April 2013, plaintiff was seen by Holly Easton, M.D., reporting he had fallen into a hole while mowing his yard. Tr. 321. Dr. Easton observed an antalgic gait, but no deformity or edema to the knee. Tr. 322. Dr. Easton found that plaintiff could extend his knee 180 degrees and bend it past 90 degrees. Id. In May 2013, plaintiff was seen by Christopher Walton, M.D., who diagnosed an injury to plaintiff's ACL. Tr. 364. Dr. Walton performed an ACL reconstruction and, in June 2014, Dr. Walton found plaintiff was "doing well," with "excellent motion, full range." Tr. 402. Dr. Walton provided no specific restrictions and determined that no follow-up was necessary. Id. The ALJ gave significant weight to Dr. Walton's opinion. Tr. 25.

The ALJ rejected Ms. Voegeli's opinion because (1) it was contradicted by the objective opinions of the treating and examining physicians; (2) it offered no specific objective medical findings to support the limitations she identified; (3) she accepted plaintiff's subjective

complaints from prior medical examinations without review; and (4) her opinion was contradicted by plaintiff's activities of daily living. Tr. 25-26.

Based on the record, the Court concludes that the ALJ adequately supported his decision to assign less weight to Ms. Voegeli's opinion. The extreme limitations, both mental and physical, assessed by Ms. Voegeli are contradicted by the generally benign findings of the examining and treating physicians and are inconsistent with plaintiff's reported daily activities. Accordingly, the Court concludes the ALJ gave germane reasons for rejecting Ms. Voegeli's opinion that plaintiff had been disabled since 2009 and for rejecting the physical and mental limitations she assessed.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is ORDERED and DATED this 21st day of September 2017.

    s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge